CLARA BAXTER, APPELLANT, V. NEBRASKA BUILDING & INVESTMENT COMPANY, APPELLEE.

FILED FEBRUARY 27, 1923. No. 22182.

1. **Trial:** REQUEST TO WITHDRAW REST: ABUSE OF DISCRETION. In an action to rescind a contract on the ground of fraud and deceit in its procurement, an abuse of sound judicial discretion may be committed where the court refuses, in a proper case, to allow a party to withdraw his rest to correct an alleged mistake in his evidence on a material matter, when it appears that the other party will not be prejudiced thereby in his lawful rights.

2. **Evidence:** ADMISSIBILITY: FALSE REPRESENTATION. Evidence which has to do solely with alleged fraudulent representations made to induce a contract is distinguishable from oral evidence offered to vary the terms of a written contract and, as such, is admissible in an action for fraud and deceit.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed.*

*Slama & Donato,* for appellant.

*Doyle, Halligan & Doyle, Good & Good* and *Johnson, Moorhead & Rine, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and DEAN, JJ., REDICK, District Judge.

DEAN, J.

Plaintiff bought from defendant 45 shares of preferred stock in the defendant corporation for which she paid $4,947.50. This action was brought to rescind the contract of purchase and to recover the money so paid on the ground that fraudulent representations were made by defendant, which plaintiff believed and upon which she relied, which induced her to buy the stock. When the parties rested, a motion was made to withdraw plaintiff's rest to permit her to correct her former evidence on a point which counsel believed to be material. The motion was overruled. Defendant then moved for a directed verdict, which was sustained, and plaintiff appealed.

Plaintiff testified that she found out the falsity of defendant's representations in the latter part of September, 1920, but, after she had given that evidence, she recalled that her statement with respect to the time of the discovery was inadvertent on her part, and that in fact, instead of the middle of September, it was not until about the middle of October, 1920, that she found out that the alleged fraud had been perpetrated upon her, and this was only about a week or ten days before the suit was begun. And it was mainly, but not solely, to correct her evidence on this point that the request was made that her rest be withdrawn.

Defendant contends that plaintiff waived the right to rescind because, *inter alia*, she accepted the semiannual dividends from the company, which amounted to 7 per per cent. annually, from January 1, 1919, to January 1, 1920, and a one-quarter dividend July 1, 1920. It is also contended that a letter written by her to defendant, under date of October 3, 1920, showed that she ratified the contract of purchase by agreeing in that letter to leave part of the money in the company and asking a return of the balance under the terms of the alleged contract. The letter follows:

"I am holding certificates amounting to $5,000, of which I wish to draw $4,000, by November the first. I regret very much to be compelled to ask you for this money at this time as I have a note coming due on that date, and I am compelled to have the money. Hoping 1 may receive an early reply, Respectfully, Mrs. Clara Baxter, 341 East 3d St., Wahoo, Nebr."

Counsel also contend that plaintiff is estopped from maintaining this action because she discovered the alleged fraud of which she complains about the middle of September, 1920. The argument is based on her evidence and on her letter and also on the evidence of her counsel. Defendant therefore concludes: "The only question to be considered is the action of the court in sustaining defendant's motion for a directed verdict."

But on this point plaintiff's counsel testified on the cross-examination that in September he, Mr. Slama, "didn't know anything about the condition of the company at all," and also that plaintiff at that time was making application for her money, "upon the promises that were made to her." Counsel appears, too, from his cross-examination, to have been insistent in demanding that the money be repaid, and this demand was in an apparent "pursuance of her (plaintiff's) contract," when he made a visit to defendant's office in September.

It may be noted with respect to plaintiff's letter defendant points out that no mention is therein made of rescinding the contract, but that it merely gave to defendant "thirty days' notice she wanted her money back on the terms of the contract." The argument is that the contents of the letter are inconsistent with any intention to rescind. On the back of each of the two or three application forms for the purchase of stock, however, there is an indorsement which in substance provides that, after one year from the date of the issuance of the purchaser's stock certificate, if the purchaser gives 30 days' notice in writing of an intention to resell, it shall then be its duty to resell, or take over such stock as may be offered for resale, upon such terms as said company shall deem to be for the best interest of the company, and to resell the stock.

It is obvious that neither the acceptance of dividends nor the writing of the letter, under the circumstances here involved, should be taken to ratify the contract, as a matter of law, if it should appear that plaintiff did not discover the perpetration of the alleged fraud for about two weeks after the letter was written. The delay in beginning the action, under the facts, was not unreasonable and, besides, it is not made to appear that defendant was prejudiced thereby in any way.

Plaintiff's explanation of the mistake she made with respect to the time when she discovered the fraud is

consistent with the allegations of her petition. She alleged in substance that October 14, 1920, she had an investigation made, and thereafter for the first time learned that the representations made by defendant to induce her to invest in its preferred stock were false and fraudulent. From this, in connection with other evidence on this point, it may reasonably be inferred that the mistake was honestly made. In *Tomer v. Densmore*, 8 Neb. 384, in an opinion by Judge Maxwell, we held that in a proper case evidence might be offered in support of either party, even after the case has been submitted to the jury, provided the party offering such evidence does not thereby obtain an undue advantage. From a review of the facts we conclude that it was an abuse of sound judicial discretion for the trial court to deny plaintiff the right to submit the offered evidence to the jury. The issue was not a question of law for the court to decide, but was a question of fact for determination by the jury.

With respect to material representations made by defendant's agent to induce plaintiff to make the contract, she testified:

"Q. The first time he came to your house, what did he tell you? A. Well, he told me about the Building & Loan Association, and I told him where I had my money, that I had my money in the Occidental Building & Loan Association in Omaha and I was receiving 6 per cent. Well, he told me then how this was similar, and it was a very good investment, and couldn't possibly lose by investing in it, and that they were paying 7 per cent. And, of course, I wanted the 7 per cent. I had put in my little insurance money that I had received from my husband after he died, and I had put that in the * * * Q. Now, just what did he tell you? A. Well, he told me then that this was similar, it was just about the same—it was the same as the Building & Loan Association in Omaha, and that it was protected by the state, and why they could pay the 7 per cent. was be-

cause they had their own material, their own brick-yard and their own lumber-yard, and in every way that they were better equipped, so that they could give me 7 per cent. * * * Q. Now, then, tell the jury what he told you the second time he came to your house. A. Well, he told me just about the same. He went over about the same thing each time, telling me what a good investment it was, and he hated awfully to think of my letting it go by because I could get 7 per cent. and it was such a good thing he didn't like to have me let it go by. And he came to the home many times, and called up there many times, and asked me to solicit money for him, to have my friends invest money, and that he would make it worth while if I invested. Q. What did he tell you, if anything, about your getting your money back? A. He told me that, after they had had the money a year, any time on thirty days' notice I could get my money back; they must have my money one year, and after that I could get it back on thirty days' notice."

The foregoing excerpt from plaintiff's evidence is reproduced from defendant's brief and is urged by it as being "the plaintiff's entire testimony of the representations made to her by defendant's agent."

The widowed plaintiff was untutored in business ways and usages. She was a housekeeper by occupation. When the contract was made she was keeping house for Louis Laudenschlager, her aged father of 86 years, who could neither speak nor understand the English language. Evidently she relied upon the statements which induced her to make the contract and she was clearly within her rights when she wrote the letter of October 3, 1920, which was introduced in evidence by defendant. All of the evidence on this point should have been submitted to the jury. The evidence had to do solely with the inducement and, as such, was distinguishable from an attempt to vary the terms of a written contract by oral testimony.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.